# NO. 12-08-00314-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHNNIE F. COLVIN,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *JAMES R. COLVIN,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *OPINION*

This is a car wreck case in which James R. Colvin, a passenger in the vehicle driven by his wife, Johnnie F. Colvin, recovered damages against his wife for personal injuries he sustained in the collision caused by the wife's (ordinary) negligence. Johnnie appealed, contending the trial court erred in failing to follow the Texas Automobile Guest Statute, which would have allowed James's recovery only if Johnnie caused the accident intentionally or by her gross negligence. She also complains the trial court erred in failing to apply the law of the parties' domicile, which provides that spouses may not sue each other for tort damages. James seeks monetary sanctions against Johnnie contending that this appeal is frivolous. We affirm the trial court's judgment and overrule James's motion for sanctions.

### BACKGROUND

On May 10, 2004, James and Johnnie left their home in Ruston, Louisiana en route to Houston for James's routine three month medical examination. In Lufkin, Texas, Johnnie made an unsafe lane change and collided with a vehicle driven by Lorene Warren. Mrs. Warren and her husband filed suit against Johnnie. On May 5, 2006, James filed a plea in intervention in the Warren suit asserting claims for damages against both his wife and Mrs. Warren for injuries sustained as a passenger in the vehicle driven by his wife. On April 10, 2007, James dismissed his claim against Mrs. Warren.

Johnnie filed her Defendant's Second Amended Original Answer on November 27, 2007

generally denying the allegations in James's plea in intervention and specifically pleading that (1) James suffered from preexisting conditions, (2) James's injuries were caused by a subsequent accident, and (3) "as a matter of Texas law, James Colvin cannot recover from his wife, Johnnie Colvin, any damages that are characterized as community property such as medical expenses and lost wages."

All parties announced ready for trial at the pretrial hearing on March 17, 2008. The jury was selected and seated on March 24, 2008. The day trial commenced, Johnnie filed a motion for involuntary dismissal based on the Texas Automobile Guest Statute and a motion for judicial notice asking the trial judge take judicial notice of the Louisiana statute barring tort recovery by one spouse against the other. The motion was denied.

After the close of evidence, Johnnie moved for a directed verdict based on the Texas Automobile Guest Statute and interspousal immunity under Louisiana law. Johnnie's motion was denied. The negligence question in the court's charge defined negligence as the failure to use ordinary care. The jury returned a verdict for James. Johnnie filed Defendant's Motion to Disregard Jury Findings and for Order of Dismissal Notwithstanding the Verdict. The trial court denied the motion, and entered judgment based on the verdict.

## IS JAMES'S CLAIM AGAINST JOHNNIE SUBJECT TO THE TEXAS AUTOMOBILE GUEST STATUTE?

In her first issue, Johnnie maintains that the Texas Automobile Guest Statute should have governed the submission of this case to the jury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 72.001 (Vernon 2008). Under the statute, a nonpaying guest within the required degree of consanguinity or affinity may recover damages against the owner or operator "only if the accident was intentional on the part of the owner or operator or was caused by his heedlessness or reckless disregard of the rights of others." *Id***.** Therefore, she maintains, the trial court erred in allowing the jury to assess damages after their finding of only ordinary negligence. Moreover, she argues, there was no evidence to support the submission of gross negligence to the jury. James argues the Texas Automobile Guest Statute is unconstitutional and could not "provide a basis for any right or relief."

**Applicable Law**

In *Whitworth v. Bynum*, 699 S.W.2d 194 (Tex. 1985), the Texas Supreme Court addressed a challenge to the constitutionality of the Texas Automobile Guest Statute. The court concluded that the statute's proviso for a less stringent standard of care of an automobile owner or operator toward a nonpaying passenger related within the second degree created a classification not

2

rationally related to the statute's purpose—the discouragement of collusive lawsuits. *Id.* at 197. After concluding the classifications drawn by the statute were not rationally related to a legitimate state interest, the court held the statute unconstitutional because it violated the equal rights provision of our state bill of rights. *See id.*; *see also* TEX. CONST. art. I, § 3.

The statute, as it existed when the supreme court decided *Whitworth*, read in part as follows:

> Section 1.  (a)  No person who is related within the second degree of consanguinity or affinity to the owner or operator of a motor vehicle and who is being transported over the public highways of this State by the owner or operator of the motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others. There shall be no such immunity for an owner or operator who is not so related to the guest.

Act of April 9, 1973, 63rd Leg., R.S., ch. 28, § 3, sec. 1, 1973 Tex. Gen. Laws 41, 42 (repealed by Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322).

The court delivered its opinion in *Whitworth* on July 10, 1985.  In the spring of 1985 immediately preceding the *Whitworth* decision, the 69th Legislature reenacted the Texas Automobile Guest Statute with minor changes and codified it as part of the  Civil Practice and Remedies Code.  *See* Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3297 (amended 1991).  The effective date of the codified statute was September 1, 1985. *Id.* The relevant section now reads as follows:

> A person who is related to the owner or operator of a motor vehicle within the second degree by consanguinity or affinity, as determined under Chapter 573, Government Code, and who is being transported in the motor vehicle over a public highway of this state as a guest without payment for the transportation has a cause of action against the owner or operator of the motor vehicle for injury, death, or loss in an accident only if the accident was intentional on the part of the owner or operator or was caused by his heedlessness or reckless disregard of the rights of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 72.001 (Vernon 2008).  The reenactment made no substantive changes in the old law.  Specifically, the section as it now reads contains the same defects deemed fatal in *Whitworth*.  The same classifications in the old law that the *Whitworth* court found not reasonably related to the statutory purpose of reducing collusive lawsuits exist in the new.  Although the slightly different language was enacted not more than three months before the delivery of *Whitworth* and was to become effective fifty two days after its delivery, there is nothing that indicates the negligible changes made were adopted in response to the dispositive constitutional concerns expressed in the *Whitworth* opinion.

3

In the twenty–four years since the Texas Supreme Court's decision in **Whitworth**, there has not been a single published Texas case applying the Texas Automobile Guest Statute. Section 72.001 has been cited only three times during that period, and in two of the cases it was recognized that the statute was unconstitutional and therefore inapplicable.

In **Keen v. Burlington N. Santa Fe Corp.**, 438 F. Supp. 2d. 724, 727 n.2 (S.D. Tex. 2006), the court inquired into the applicability of the guest statute, but the parties agreed it was unconstitutional and inapplicable. In **Naranjo v. Naranjo**, No. 13-98-486-CV, 2000 WL 35729198, at *1 (Tex. App.–Corpus Christi, August 10, 2000, no pet.) (not designated for publication), the trial court granted summary judgment based on the guest statute, but then granted a motion for new trial that pointed out the statute was unconstitutional. In the third, the validity of the statute was apparently not raised. *See* **Harris County v. White**, 823 S.W.2d 385, 389-90 (Tex. App.–Texarkana 1992, no writ). The Texarkana Court of Appeals dismissed Harris County's contention that a prisoner being transported from the county jail to the state prison was a guest without consideration of the statute's constitutionality. *Id.*

Johnnie's contention that she owed her husband James only the less stringent standard of care provided by the guest statute is without merit. Section 72.001 is unconstitutional. Johnnie's first issue is overruled.

### SHOULD THE TRIAL COURT HAVE APPLIED LOUISIANA LAW?

In her second issue, Johnnie maintains that "[i]n matters of spousal liability for torts, the law of the parties' place of domicile should apply and in the State of Louisiana spouses may not sue each other for tort damages."

The day after the jury was selected and seated and shortly before the presentation of evidence was to begin, Johnnie filed her motion for judicial notice and motion for involuntary dismissal alleging that both James and Johnnie were longtime residents of Louisiana and that the applicable law was that of the parties' domicile. The trial judge inquired why Johnnie had not raised the issue before trial. Counsel responded that he was not aware of the Louisiana law until after the pretrial conference the week before. The trial court denied the motion to dismiss. He indicated that the case would be submitted to the jury, and that he would rule after the verdict whether Louisiana law should apply. The judge initially stated, "I'm going to take judicial notice of whatever law you–all present to me, Texas and Louisiana, and then I'll apply what I think the law is . . . . I'll grant judicial notice of anybody's law they want to present to me. But because of

4

the lateness of it all, we are where we are." James's counsel then stated, "[I] want to make sure that the Court's aware that I'm not waiving my objection to the timeliness of his pleadings, I'm not waiving my objection to his failure to move for leave of court, and I'm not waiving my objection to his failure to comply with the docket control order." The judge responded, "I've sustained your objection because I'm not ruling on it preverdict."

At the charge conference, Johnnie reurged her motion for judicial notice. The trial judge interrupted Johnnie's counsel stating, "Let me interrupt you. Pardon me . . . . I granted judicial notice of whatever law to be presented by any party, and I'll be looking at that postverdict. So that's been granted." The judge went on to note that the copy of the Louisiana interspousal immunity statute provided him was unclear, because it contained an exception for "causes of action . . . arising out of the provisions of Book III, Title VI of the Civil Code[,]" and the judge did not know what those causes of action were. The judge concluded by saying, "I'm going to deal with this postverdict, as I indicated pretrial, because of the timeliness of the motions."

After the jury returned its verdict, Johnnie filed a Motion to Disregard Jury Findings and for Order of Dismissal Notwithstanding the Verdict. James objected based upon Johnnie's failure to timely raise the Louisiana statute. In making his decision, the trial judge stated as follows:

> I'm denying the Defendant's Motion to Disregard Jury Findings and for Order of Dismissal. The base of my decision is twofold. ***Number one, I really think we've got a waiver issue, nonpleading and a waiver issue***.
>
> Number two, if I'm to apply Louisiana law, under the rest of the story of Louisiana law that I've heard here, the claim could have been made against the carrier and the carrier is here as a party in interest through counsel. You represented their interests, quite frankly.

James maintains the trial court's ruling must be upheld because (1) interspousal immunity is an affirmative defense that Johnnie failed to plead, (2) Louisiana's interspousal immunity statute provides a personal procedural defense and not a substantive right, (3) Johnnie did not provide timely, sufficient notice of intent to rely on Louisiana law, (4) Johnnie did not provide the trial court sufficient information to enable it to take judicial notice of the Louisiana law, and (5) interspousal immunity is contrary to good morals and natural justice, so Texas courts should not enforce it.

**Applicable Law**

Texas follows the Restatement of Conflicts and applies the most significant relationships test to determine whether one family member is immune from tort liability to another family member. ***Robertson v. Estate of McKnight***, 609 S.W.2d 534, 536 (Tex. 1980). Usually the

5

applicable law will be the local law of the parties' domicile. *See id.* at 536-37. Texas courts will refuse to enforce a foreign law only if the law violates good morals, natural justice, or is prejudicial to the general interests of our own citizens. *Id*. at 537.

Texas Rule of Evidence 202 governs the procedure for determining the law of other states. In pertinent part, it provides as follows:

> A court upon its own motion may, or upon the motion of a party shall, take judicial notice of the constitutions, public statutes, rules, regulations, ordinances, court decisions, and common law of every other state, territory, or jurisdiction of the United States. A party requesting that judicial notice be taken of such matter shall furnish the court sufficient information to enable it to properly comply with the request, and shall give all parties such notice, if any, as the court may deem necessary, to enable all parties fairly to prepare to meet such request.

TEX. R. EVID. 202. The failure to plead the sister state's law will not preclude the trial court from taking judicial notice of that law, but rule 202 does not require it. *Daugherty v. So. Pac. Transport Co.*, 772 S.W.2d 81, 83 (Tex. 1989). To assure the application of the laws of another jurisdiction, a preliminary motion is required. *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.–Corpus Christi 1999, pet. denied). If a party does not ask the trial court to take judicial notice of the law of another jurisdiction or fails to provide adequate proof of the content of that law, the law of that jurisdiction will be presumed to be the same as Texas law. *Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633, 645 (Tex. App.–Texarkana 1995, writ dism'd). Rule 202 requires not only that the moving party furnish all parties any notice that the trial court deems necessary, but the movant must also provide sufficient information to the trial court to determine the foreign law's applicability to the case. *Daugherty*, 772 S.W.2d at 83. The determination of the movant's compliance with these requirements is within the discretion of the trial court. *Id.* Ordinarily, a motion made on the eve of trial is too late, and the trial court does not abuse its discretion in denying it. *Pittsburgh Corning Corp.*, 1 S.W.3d at 769-70.

**Discussion**

During the almost two years James's suit against Johnnie languished on the trial court's docket, Johnnie never raised the applicability of Louisiana law. At the pretrial conference one week before the trial setting, the matter remained unmentioned, and both parties announced ready for trial. Only after the jury had been seated and sworn with the trial set to begin within the hour did

Johnnie present her motion to take judicial notice of Louisiana law. Despite the ambiguous nature of the trial judge's initial comments regarding the belated motion, it appears that the judge based his refusal to grant the motion on its untimeliness and Johnnie's failure to give necessary notice to the opposing party. The judge also commented that the copy of the statute appended to the motion excepted those "causes of action . . . arising out of the provisions of Book III, Title VI of the Civil Code" and that he was unaware of what was comprehended within Book III, Title VI of the Civil Code. Johnnie's counsel never responded to the judge's concerns by providing him with Book III, Title VI of the Civil Code, information essential to a determination of the Louisiana statute's applicability. Faced with an untimely motion providing inadequate proof of the content of the sister state's law, the trial court did not abuse its discretion by applying the law of Texas. Johnnie's second issue is overruled.

### DID THE TRIAL COURT ERR IN DENYING JOHNNIE'S MOTION FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT?

In her third and fourth issues, Johnnie contends the trial court erred in failing to grant her Motion for Directed Verdict and her Motion to Disregard Jury Findings Notwithstanding the Verdict.

Johnnie advanced the identical arguments in support of these issues that we have already addressed and rejected in our consideration of her first two issues. Johnnie's third and fourth issues are overruled.

### FRIVOLOUS APPEAL

James asks that we assess monetary sanctions against Johnnie for frivolous appeal. *See* TEX. R. APP. P. 45 (authorizing an appellate court to award a "prevailing party just damages" upon determining that an appeal is "frivolous"). In deciding whether an appeal is frivolous, the court of appeals reviews the record from the appellant's viewpoint in order to determine whether the appellant had reasonable grounds to believe the judgment could be reversed. ***Smith v. Brown***, 51 S.W.3d 376, 381 (Tex. App.–Houston [1st Dist.] 2001, pet. denied). Although we have rejected Johnnie's contentions on appeal, we cannot characterize the appeal as objectively frivolous. James's request for sanctions is overruled.

7

## DISPOSITION

The judgment of the trial court is ***affirmed***.


**BILL BASS**
Justice


Opinion delivered July 8, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Bass, J., Retired Justice, Twelfth Court of Appeals sitting by assignment.*


(PUBLISH)

8